Third case, Cordova v. DIRECTV. Thank you, Your Honor, and may it please the Court, Andrew Pincus for Appellant DIRECTV. This is a Rule 23f appeal of the District Court's class certification decision with respect to a claim under the Telephone Consumer Protection Act. Most TCPA claims relate to the provision of the Act that prohibits calls using automatic equipment. This case involves a different and much less frequently litigated provision of the Act, Section 227c, which authorizes the FCC to promulgate regulations, and I quote, to protect residential subscribers' privacy rights to avoid receiving telephone solicitations to which they object. Those regulations apply to manual calls, and they establish a do-not-call list, a national do-not-call list, and also require companies engaged in telemarketing to establish their own internal do-not-call lists. Consumers who never made a request to be on Telesel's internal do-not-call list lack standing to assert a claim under this provision. Each class member, therefore, must prove that he or she made a do-not-call request and subsequently received a call. Right, but the essential question is when in the process that must occur. Our case law holds, our binding case law holds that when we ask the justiciability question, do we have the power to entertain it as a case or controversy, the focal point is on the named plaintiff or plaintiffs, and we ask whether the claim by the named plaintiff is justiciable. It seems to me the point you're raising really arises under B-3 more than it arises under the power of this court to entertain the case. Do I have that right or am I missing something? I think you're exactly right, Your Honor. So the question is not whether the claim, the case is justiciable in the sense that does the court have the power to entertain it? The answer is yes, right? The question is the B-3 question of what predominates. Exactly. The question is, is there an individualized issue that has to be addressed in the course of the trial? We submit there is the issue that I laid out. Was there an objection by each class member and did that class member subsequently receive a call? And that that individualized issue, those individualized issues had to be taken account of by the district court in making its predominance determination. We have a lot of case law out there, here and elsewhere, suggesting that that question about standing on the part of the unnamed, passive, putative class members is something we're more likely to take up on the back end rather than the front end of the certification process. You might be right, but why is that something the district court has to take up now? Or more awfully put, why is that something that suggests the district court abused its discretion in fashioning the class the way it did? Because the district court can enter a judgment that provides relief to a party that doesn't have standing. So in the course of the trial before the district court, each absent class member's standing has to be proven. That's not something that can be put off for some process that doesn't involve the Article 3 judge's decision or the jury's decision. It's a critical fact that has to be ascertained during the trial. And so in assessing what the common issues and the individualized issues that have to be proven in the course of the trial, this question of what facts have to be proven to prove standing has to be taken account of in that assessment. And here the district court said that fact never has to be proven because all you have to prove is the fact of a call. Let me ask the question this way. When we get to the B3 question, we ask what predominates. There are obviously common issues here. You agree? There are certainly, there is a common issue. You've got to have. Yes. They've got to make two or more calls within a 12-month period of time and not maintain a list or procedures surrounding the list, right? Those are common. Yes. Although the two or more calls are individualized to each class member. So it's really going to maintain the list. Well, whether it's two or 22 or 222 hardly matters. It may matter. It may matter for damages. But in terms of liability, it would matter not one whit, right? It doesn't matter for liability, but it still has to be proven with respect to each class member. Okay. Now, the problem with standing on the part of the passive members of the class, I understand you to basically be making two arguments, but I want to be sure that I have that right. You say they don't have standing because one, their injury isn't concrete and immediate. And two, whether it's concrete or immediate, there's no standing because the injury or harm is not traceable to the procedural violation. Is it the first? Is it the second? Or are you arguing both? I think we're arguing both. I think that the plaintiffs have set up a couple of different injuries as their basis for standing. And so we have arguments targeted on each. Their principal argument, I think, is you received a call and therefore a call is injury and therefore there's an injury. Right. And they cite to our case law dealing with faxes, where we've held getting a junk fax is enough. I was on the panel. I remember the case vividly. Exactly. And those, of course, were all claims under the provision of the statute. Right. It's a different provision. It's a different provision. But what we said there was accessibility was affected. So with respect to the call, our principal argument is not that a call can't be a concrete injury. Our principal argument is there is not a causal connection here because there's an independent cause of the injury, which is the failure to object. So that's not Lujan 1.  That's traceability. That's traceability. That's the argument. We have a second subsidiary argument that in this situation, if you look at what Congress did, a call is enough from an automatic dialer. Congress said, no, a call isn't enough with respect to manual calls. There has to be an objection. We think that could also be an argument that goes to the first prong of Lujan, whether Congress has elevated a manual call to injury. But our principal argument on this prong, on this kind of injury, is traceability. Okay. So it's not so much that there wasn't a concrete injury. It is that even assuming there was, in no sense can it be traceable to the procedural violation if they didn't make a phone call and say, take me off the list. Because the injury would have occurred even if there had been a list. There's a second. Okay. You just lost me. I thought that increasing the risk of injury could be sufficient injury. I thought under the law, if what you do increases the risk of injury, well, if the injury is getting the call because it ties up the phone or whatever, invades privacy, I don't know, whatever it does, then keeping a list, not keeping a list, doesn't that increase the risk of injury, not keeping a list? Not to people who didn't object, Your Honor. It's basically an independent clause. Even if there were a list here, these people would have gotten the same injury, a phone call, because they never objected. They never asked to be put on the list. So what courts have said and Wright and Miller have said is, if the injury would have occurred anyway, sometimes it's speculative whether the injury would have occurred anyway. Here it's 100% certain that the injury would have occurred anyway if somebody didn't object. So that superseding clause cuts the traceability. Okay. Well, the representative of the class, Mr. Cordoba, or I don't know, I'm just using representative of the class because the plaintiff, he made objections, right? The whole class must establish standing, not just Mr. Cordoba. You rise and fall with that, right? Before judgment is entered at the end of this case . . . Well, that's at the end of the case. Right now, when the case starts, if you assess standing at the beginning, Mr. Cordoba has standing. So if the issue is, does Mr. Cordoba have standing, then you lose. So the issue has to be, do we look at the whole class at the beginning of the case? So I got the issue right? Well, I think the issue, just to put a slight nuance on it from my colloquy with Judge Marcus, the issue is . . . He's too fast for me. . . . does the trial have to include a determination with respect to each class member? We think yes, because by the end, before judgment is entered, each class member has to prove their standing. And so if that's so, in assessing predominance, in determining whether this case can proceed as a class action . . . But I thought, for purposes of this appeal, the only thing that the Court accepted was standing, not the whole predominance test. I think the Court accepted standing with respect to the absent class members, and we think that goes directly to predominance, as this Court's decision and the decisions of other courts have said. In the predominance inquiry, if standing requires an individualized determination at trial, then that individualized determination has to be considered in assessing predominance. And because the District Court here didn't believe that determination was necessary, the District Court here said, as long as you've gotten a call, objection is irrelevant. I don't need to consider that individualized issue in my predominance inquiry. So what you want is to send it back to the District Court for more consideration? I think what we'd like is for this Court to hold that proof of an objection and of a subsequent call is required for each class member to prove standing. Those are individualized issues, and the District Court has to reassess its predominance determination in light of the fact that those individualized determinations have . . . Can we tell . . . Go ahead, please. Counsel, assuming you're right, just make that assumption, isn't the focus of the real question, should it be done now or should it be done later in the process of looking at all the claims? Isn't that the real question? I don't think we're contending that before the class can be certified, every single absent class member has to come forward and prove standing. I don't think that's required. See, I thought your position, Mr. Pincus, was the District Court never even considered traceability in determining the class. It didn't consider traceability in . . . So it never really asked the essential question under B-3, which is that whether that which was common predominated over that which was disparate. That is exactly our position. And it ought to have done that, and it was obviously an abuse of discretion never to have even considered that question. That's your position. That is exactly our position, and so it's the predominance question that is the fulcrum  Wait a second. When I go back and look at, which I have not done, look at the argument before the District Court, and there's a reason I'm asking this question, because in your initial brief, you focused really on competence, and then it was in your reply brief that you discussed traceability and the issues we're talking about right now. Did you argue that to the District Court? We did, and we cite a passage there in the reply brief in which we argue that. And let me just, if I can just make one additional point. We focused on concreteness because our initial point was the failure to create a list by itself, which is what we thought the plaintiffs were going to rely on, is not a concrete injury. That's why we focused on concreteness at the beginning part. Let me ask you, I'm not quite done. Just give me a second. You're on our time, not yours. I've got two practical fact questions, and I can't answer them from the record. Maybe I missed it. One, of the 16,000 or so members of the putative class, how many actually made a don't call me back request? We don't know, Your Honor. But we do know, there's a little bit of a hint, because we know that 952 were on the national do not call list. So to the extent that's indicative. So presumably, but that would be less than 10 percent of the whole. That would be a very small number. And you'll see where I'm going with the question. The second one is, how accessible is that information? I think it's information that, as Mr. Cordoba did, the class members can allege it. In discovery, is there, no, no, I understand that. But as a matter of discovery, is it easy to find out? Can you push a button and tell us how many people actually called you and said, don't call me, I'm tired of your phone calls, leave me alone. So there would be no other record keeping method. I think there will be information in the class members' records of whether they made calls. That's not my question. You understand the thrust of my question. There's nothing in the defendant's records to show whether an objection was made. But I don't think that's a reason why, that doesn't provide a reason for relieving the plaintiffs of their obligation to prove their standing. They have the ability to. They don't dispute the obligation. The question is when they're obliged to show it. And I think they have to show it at trial, because otherwise the Rules Enabling Act. That may be. But the question is whether or not that ought to be something addressed on the front end. You've got to establish that the way the trial court fashioned this class amounted to an abuse of discretion because it was too broad. They included a whole bunch of people about whom it's clear that the disparate claims predominated over what was common precisely because they can't win. No matter what you say, they can't recover if they never made a call. I don't know if I have to establish that. I think that's one way I could win, Your Honor. But I think another way I could win is that at the front end, the district court has to assess what are the common issues that are going to have to be proved for the plaintiffs to win and what are the individualized issues and assess the predominance inquiry. And because the district court here didn't left out a critical individualized issue, it didn't do what Rule 23 requires at the front end, which is to make correctly assess whether common issues predominate. And that's what we think the district court has to do. By not keeping a do not call list, you're going to make it impossible for a plaintiff to ever prove they have standing, right? Why can't the district court turn it around and say, you should have kept a list. We're going to put the burden on you to show they didn't make the call. I don't think there's anything in the law, Your Honor, that gives the district court the power to do that. If you look at other cases in which the Tyson case in the Supreme Court, which we rely on for other purposes, is one, there the defendant didn't keep the wage and hour records. I don't know. They might say some equitable remedy. You have unclean hands. You're defeating everything by not keeping the records. Spoilation. I don't know. I can't believe you can't come up with something. I think spoilation, there's actual statutory and rule authority to do it. I don't think there's anything in the law, and as I say, Tyson is a good example because what courts do in this situation is to say, we are not relieving you of the burden, but we're letting you come forward with other kinds of evidence that may be less probative. And if in this circumstance, that's... So if he redefines the class as people who made the call, that's how he does it, and then the burden of proof is on you, you get to the same place. I think it would be unconstitutional to put the burden of proof on the defendant to prove lack of standing. I think that what the Rules Enabling Act says is substantive rules can't be changed because it's a... And to make it a class action. And I think that would be exactly right. And I think the critical thing here is there's no great incentive for companies to not keep a record. First of all, there's federal and state enforcement actions, and there's a safe harbor in the regulation that protects you if you have records. So it's not as if companies are going to say, this is some great deal, let's not keep records because it ends up hurting them in other ways. Thank you. Thank you. Mr. Selbin. Good morning. Yes. Thank you, Your Honor. Good morning. May it please the Court. Jonathan Selbin, Leif Cabraser, Hyman and Bernstein on behalf of the appellees here. Picking up on the questions Your Honors were asking my friends here, I have to disagree with a couple of statements he made. First of all, he began by saying this is a class certification appeal. As Judge Rastani noted, you all only took this on the standing issue, not on the class certification. They raised all of those issues about predominance as part of their 23F appeal on class certification, and this Court didn't take it in that way. The second thing is the traceability issue. Yes. Sure. Yes, Your Honor. In the order, the order referred to the questions presented and certified the first question and not the second question. Right. And when you look at the first question, it's fairly broad, whether a recipient of a telemarketing call who did not request to be placed on the caller's internal DNC list has standing on to maintain a claim that the caller failed to institute appropriate internal DNC list procedures. Right. That, that is fairly broad. That's correct, Your Honor. But as... That's what was certified. That's right. But as Judge Marcus noted, the case law from this Court and this panel, members of this panel at least in multiple different cases, is that when you analyze standing in that context, you look solely at the named plaintiff. You don't go out and look at the standing. I agree, but that's another question. Well, I think it's related here because I think it informs what this Court granted here. Because I do believe, and maybe it was an erroneous grant in some senses, but I do believe that the grant as granted was as to the standing of somebody in those circumstances. And I think the case law is very clear that you look just at that named plaintiff. And it's not just in this context. I think every circuit generally agrees. Right. Right. I think that's right. At least one class representative must have Article III standing to litigate a claim on behalf of that class. Right. I mean, that... Every circuit. But what... To what degree these considerations are relevant at the class certification stage seems to be what we're talking about here. I think that's right. And Your Honor, the Court below devoted, I think, eight pages to the standing inquiry for precisely that reason. This isn't an issue that the Court below waived off. Did the district court ever address traceability? Good question, Your Honor. And I have to disagree with my friend. It was not raised below by the defendant. They have a site. It doesn't say that, in our view. It was not an issue that was litigated below. We think they've waived traceability, and it wasn't, as you noted, raised until their reply brief. No, I don't agree with that. I think it was raised in the blue brief. I don't think it was raised well. I don't think it was raised squarely. But I do think if you look at the blue brief, they say they make a traceability argument. It's beyond the concreteness of the injury. They say the injury sustained, even assuming arguendo that it was otherwise cognizable, was not traceable to the wrongdoing, to the procedural violation. They say that. And they say that in the blue brief. I'm prepared to be generous about them raising it before this Court. They didn't raise it below. Let's assume, for our purposes, that the definition, the question that came before us, was phrased broadly enough to include within its ambit the question of whether or not this class was properly framed under 23b-3, in which case the question becomes whether or not that which is common predominated over that which was disparate. If the district court never considered traceability, and of course the district court has an obligation to consider that, I suppose, independently, even if it wasn't raised, but how do you get around the traceability argument? That's the problem that I'm having. It may be your answer to me is, I can't, but don't worry about it now, we'll fool with it later. But I will tell you, if I were the trial judge and I were handling the case, I would think I'd want to know up front how many of the 16,788 passive putative class members never actually made a request not to be called. So for standing purposes. Because it would occur to me that if the overwhelming bulk of the passive plaintiffs fell into that category, boy, then I've drafted my class too broadly. I don't think for standing purposes. I understand. No, no, no. I'm actually trying to address your question, Your Honor. I think on the class search side, I don't think for standing purposes absent class members have to have requested not to be called. This gets to the traceability issue if we're talking about it. And the reason is, they got the call. It was part of an unrestricted telemarketing campaign, which is precisely what the TCPA was aimed at. We have the Supreme Court telling us that. So we have the call, which we know is a harm because the district court, I believe, said it involves time, mental energy, and privacy. It's an invasion of those things. It also takes up use of your phone. So they're standing there from the call. You have an unrestricted telemarketing campaign, which is the precise thing that the Supreme Court has said the TCPA was aimed at deterring. Then you have their failure to maintain the internal do not call list, which is standing alone might be a bare procedural harm, except that because they don't maintain the list, there is a real risk that you will be called again and again and again, just as Mr. Cordova was. So even as to an absent class member who never made that request, we believe they have standing to bring that claim. Now whether they have a winning case on the merits is a different issue.  It's clear that standing requires three things for case and controversy purposes. Three things. One, that the injury sustained was sufficiently concrete and immediate enough. Two, distinct, analytically distinct requirement that the injury itself, the harm itself was traceable to the misconduct. Right. And three, that it would be redressable by a court. It's the second one that I'm having trouble understanding in this case. So if I'm a homeowner and I get a phone call, they call me twice and I listen to them and I hang up the phone, but I don't call them. I don't write them and I don't tell them, don't write me, don't call me, I'm not buying what you're selling, leave me alone. If I don't do that, then whether they maintained a list or they didn't maintain a list seems to me to be utterly irrelevant. I may be missing something there, but I don't see how the procedural violation has any traceability to the harm itself sustained. I think you're conflating standing and merits there. At least that's our position. Well, standing and merits, you see, standing and merits often overlap. I understand they overlap, but this court has held repeatedly, and your Mulhall opinion and your Wooden opinion both say this, that you have to be careful. I don't have to prove my claim, I just have to be the right person to bring that claim. So every absent class member is the right person to bring the claim because they got the call, it was part of an unrestricted telemarketing campaign, and they didn't maintain a list that gave me a chance to prevent future calls. That's the risk of harm point. Let me reframe it in this way. Suppose it wasn't a class action. Of course, it's inconceivable anybody would fool with it if it wasn't. But let's assume it wasn't a class action, and the plaintiff in the case never made a request to take him off a list. But the defendant in the case improperly never maintained a list. But the plaintiff never said, get me off, he got two or more calls. Could he win? Would the plaintiff win? Our position is that, well, our position is that plaintiff absolutely establishes traceability, but we think they also win on the merits, but that hasn't been decided yet. That hasn't been decided yet. You're not focusing on my question. You're focused on the traceability. I am asking you if a plaintiff in a non-class action circumstance never called, tell cell, and said take me off the list. Just got his calls, was unhappy about it, hung up, but never said don't call me again. Could he establish traceability? And if the answer is yes, tell me how. I think the answer is yes. And I think the reason. And if the answer would be, you would agree that if the answer is no, he couldn't prevail. He couldn't establish the justiciable case because he wouldn't have standing. If the answer is no, then that individual plaintiff looking just at his stand, correct, would not be able to establish. He could not prevail in the case. That's right. Because it's an element of standing. I agree with you 100 percent. So tell me why it's traceable. It's traceable because each one of those absent class numbers received the call. It was part of the telemarketing campaign and they didn't have the opportunity to say no. Now, whether they said no or not, and this is why I keep going to the merits, is a merits question. It's sort of like trespass. I was trying to think of other old torts that were sort of of a similar nature. And in a trespass claim, if you came onto my property, I could sue you for coming onto my property. Now, you may have defenses. You invited me. There were exigent circumstances. I otherwise had a right to be on your property. But I'd be the right person to sue you for coming onto my property. I'd have standing to bring that claim. These class members have standing to bring the claim because they got the call as part of an unrestricted telemarketing campaign. Whether they objected or not is ultimately the question of whether DirecTV had the right to make the call or not. Now, they argue the burdens on us to show they didn't have the right. That's the to which they object language. But the other pieces of the TCPA talk about the other side of the same coin, which is consent, right? And so it may be that if they kept the records, we'd have the burden of proving that we made the request. All they can tell you, all Mr. Pincus can tell you is that they don't know how many people made the request and they can't tell you who made the request because they didn't do the one thing that the regulations specifically require them to do. And by the way, their own consent decree, what the government requires them to do, which is to maintain this list. Well, then shouldn't the class be defined as those people who made the request? And then it's a matter of what happens at trial and who bears the burdens and whatever. But if, but why isn't the definition of the class? Why doesn't it include it? That was our original definition of the class before we knew they didn't maintain the list. So in our original complaint, we defined the class as everybody who got the call who had made a request not to receive it. Once we learned in discovery that they didn't maintain the list, we changed the class definition and that's what the court certified, which is everybody who got these calls because the court in its analysis reached the same conclusion that we did, that all of those people have standing to bring that claim. They may lose. It may be at the end of the day, and there's experts who've gone through and addressed all of the other predominance issues that they've raised, the who's a residential versus business, all the other issues can be dealt with as the district court found. But the district court found that everybody has standing to bring that claim because everybody was subjected to, again, the same three pieces that give them, make them the right person to bring the claim. Okay. If the district court should have done a more thorough traceability analysis, and that's part of Article III standing and whether there's subject matter jurisdiction, it kind of doesn't matter if it was raised below. It has to be done, right? Well, I think if it's part of Article III standing, it depends on how you're framing the traceability issue, but I think that the district . . . I think Judge Marcus phrased it as an Article III issue. So if it is, it has to be done no matter who raises what. Standing is always obviously an issue that the court has an independent obligation to review, but I think the district court did the traceability analysis because it agreed with our position that it's those three pieces together that give you the standing, and that the failure of them to maintain the list is part of what gives you the standing. And again, that's why we changed our class definition to broaden it. But again, if these issues become ripe, I don't think any of them are ripe right now because standing at the time of class certification is only supposed to be the named plaintiff, and they agree that Mr. Cordoba has standing, and so that should be the end of the inquiry. So suppose the named plaintiff has standing, no question about justiciability, but suppose hypothetically that I drew a class so broadly that the overwhelming majority of the putative class members plainly could not prevail because they had no injury, in fact. I'm not saying that's your case here, but just assume that's the case. You've got 10,000 class members of which virtually all of them have no standing. Are you suggesting that it would be improvident to consider that issue under B-3 on the front end of the certification question? I'm not suggesting it would be improper to do that. I don't think it's our case, but I don't think it's improper, and I think the Court would get a pretty thorough… Wouldn't a district court want to know that on the front end? Well, I don't know what's in the district court's mind, but I suspect part of it based on what it said in the opinion is that their failure to maintain the list can't absolve them, can't be a blanket immunity from class certification. And I think that's why the district court reached the conclusion that it reached on that point, is that I think that it viewed the issue as one that they created and they should not be able to benefit from in opposing class certification. I believe my time is up. I'm happy to answer any other questions. No, we cut into your time, so if there's anything else you want to say, we'll be happy to give you another minute to do it. I guess the only other point I wanted to make, I don't think we addressed in our briefing Your Honor's Nick Law decision, or I guess Judge Marcus, you were on that panel, and I wanted to address that briefly in the context of the Moransky-Godiva chocolate case that came out that also addresses Nick Law. Well, let me ask the question this way. Is the harm the same? If I have a fax machine and it's filled up with these junk unsolicited faxes coming in all the time, I can't use that machine anymore. I mean, I've suffered a harm. Forget the cost, it's minimal anyway. But my accessibility to the machine, that's what we were troubled about there. Is that the same thing as a phone? I have a telephone and I get a call from a telemarketer, and I'm on the phone with someone else and I just hang it up. Common sense says yes. I agree with your two colleagues. Common sense says yes, and I don't think there's any real dispute here that a call qualifies, and certainly the case law out there suggests as much, and I would say that on the fax machine case, the Endocrine case cites back to the Palm Beach case, which says that the lack of accessibility of the fax machine is among the injuries that count as injury. It's not the only one. But I did want to address the Nick Law case, because I do think that the Nick Law case is on the far extreme of the standing issue. Because in the Nick Law case, before the lawsuit was ever filed, the plaintiff there, the defendant there had already cured the problem, which was the recording of a mortgage was supposed to be done within 30 days, and it wasn't done for 90 days. No harm, because it was already all done before the lawsuit was ever filed. Here, you have much more than that, because you have the risk of the recurring call, because even if you asked not to be called again, they wouldn't honor it, as they didn't do with Mr. Cordoba, because they don't keep records of it. So I think that the Moransky-Godiva case and the Nick Law case stand as examples on opposite ends of standing, and that we're on the Moransky receipt side, where they didn't maintain the receipts as they were supposed to. Let me ask two additional questions. Can we tell from the record, do we have any rough idea, how many of these class members, there were over 16,000, actually made a call and said, don't call me again? And if the answer is we can't, is that information that's easily accessible? It is not accessible from the defendant. We don't know. It is not accessible from the defendant, which is what we learned in discovery. We may be able to go out and survey class members, for example, to find out how many. It's not such a, it's not millions of class members, right? So it may be possible to contact those people. Right. You'd send them notice and say, did you ever ask? Well, you know there are some, because there aren't enough. Right. So a thousand of them, you know, would have made a request. And they don't dispute, I don't believe, the national do not call list folks have standing. Right.  They have standing in the records that the law and their own consent decree require them to maintain. So we don't, we can't do it. Thank you very much. Thank you, Your Honor. Just a couple of points, Your Honor. With respect to the national do not call list, we don't dispute that those people have standing on their national do not call claims. I just was putting the number out there to say, as a rough idea, if 972 of the 16,000 plus put themselves on the national do not call list, probably even a lesser number would have called an individual company. We don't know. But I think it's indicative of the number of people who might have objected. Okay. Do you agree? But those people have an independent claim. We're not saying they necessarily have a claim. You agree Mr. Cordova has standing? Yes. So only if we go, if we decide that the issue is bigger than that, do we get anywhere? I think the issue has to be bigger than that because by the time the district court enters judgment if the plaintiffs prevail, they have to prove standing. Your problem is really the way the class is defined, that it needs to have the extra words in it. Well, either the class definition has to change. We didn't accept that question, did we? Well, I think you accepted the question of how standing impacted on the class certification decision. It was a pretty broad question. If we had only sought review with respect to Mr. Cordova, we conceded that he had standing and as Judge Marcus noted, there were precedents in this court that said if the class rep has standing, they're standing. So the briefing on the 23F motion indicated that our issue was this predominance issue. So I think it's pretty clear that the court did accept a review on that issue. Well, I don't know. It said a certain issue and then the parties briefed it and the question is, was it fair notice to the parties of what the issue was? So you're saying it was fair notice because obviously you all agree that if Mr. Cordova is the only issue, then why are we having a fight here? Exactly. So you think it was fair notice? I think it was fair notice. I think the briefing on the Rule 23F and certainly the briefing in our opening brief, which did on page 17 raise the traceability issue, reflected it. Tell us where you raised it in the trial court. We raised it, we have a slide in our reply brief. Raising something in a reply brief, does that count? No, I'm not talking about that. I'm talking about in the trial court. Yeah, before the trial judge. We cite in the reply brief on page 10, ECF number 70, where we talk about the need for the harm to be relevant to the, related to the failure to object. See, as I read it, you made the argument what you didn't do was use the words traceability. Do I have that right? I don't think we actually used the word traceability, but I think we said it required, that it was an element of what was required. Just to finish my answer to Judge Rustani's question, I think there are two choices here. The class definition could be changed or the class definition could remain the same, but there has to be an assessment under predominance of this issue having to be proven to filter out the members of the class who are not entitled to recover. So it can be done in either of those two ways, but either way requires a remand to the district court. My friend mentioned consent as an issue that has been found not to preclude predominance, but of course consent is an affirmative defense. It's different than the obligation on a plaintiff to prove standing. And I think with respect to Your Honor's concrete injury question, I do think there's a difference here and Congress created the difference in saying for automated calls, we're going to say you don't have to object. Just getting to is enough. But for manual calls, we are going to require you to object and I think that reflects a congressional determination about the injury, unless the court has any further questions. Thank you both. It's an interesting case. We'll go on to the last of the cases. I'm not sure I'm going to get this pronunciation right.